UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Darren Starr,
    Petitioner

    v.                                        Civil No. 07-cv-311-SM
                                            Opinion No. 2008 DNH 132
Larry Blaisdell, Warden,
Northern NH Correctional
Facility,
    Respondent


**O R D E R**

Darren Starr, an inmate at the Northern New Hampshire Correctional Facility, petitions for a writ of habeas corpus. 28 U.S.C. § 2254. He says he is being held in violation of his right to due process because he was sentenced in accordance with N.H. Rev. Stat. Ann. ("RSA") § 651:2, II-e, New Hampshire's truth-in-sentencing law, and that statute was enacted without notice to the public. Before the court is respondent's motion for summary judgment. Petitioner objects. For the reasons given, respondent's motion is granted.

**Background**

On November 17, 1987, petitioner was convicted of second-degree murder. He was "sentenced to a term of twenty-eight years to life imprisonment in accordance with RSA 651:2, II-e." Starr v. Governor, 154 N.H. 174, 175 (2006).

RSA 651:2, II-e, was a product of the 1981-82 special session of the New Hampshire legislature.  See id.  The legislature was called into session by a resolution of the Governor and Council ("G&C resolution") that enumerated various matters requiring legislative attention.  Truth in sentencing was not among the matters enumerated.

The special session convened on November 17, 1981.  Among the bills introduced that day was HB 20, titled an act "relative to minimum mandatory sentences for driving while intoxicated." N.H.H.R. JOUR. 19 (1981-82 Spec. Sess.) (hereinafter "H. JOUR."). On December 30, 1981, Representative Carswell, one of the authors of HB 20, filed an amendment to the bill.  The amendment renamed the bill an act "relative to minimum mandatory sentences for driving while intoxicated and various other crimes" (Pet., Appx. at 45), and it included a provision requiring that persons convicted of certain crimes serve their full statutory minimum sentences (see id.).  The House Judiciary Committee held a hearing on HB 20, including the truth-in-sentencing amendment, on January 5, 1982.  (See id. at 54-55.)  After consideration by the House, see H. JOUR. 25, 35-37, 39, the Senate, see H. JOUR. 77; N.H.S. JOUR. 96, 149-57 (1981-82 Spec. Sess.) (hereinafter "S. JOUR."), and a conference committee, see H. JOUR. 476, 486; S. JOUR. 209, 770-71, 813-14, HB 20 was enrolled on May 13, 1982,

see H. JOUR. 519; S. JOUR. 866, and became effective on May 22, 1982, see 1981-82 N.H. LAWS 87.

"In December 2004, [Starr] sought a declaratory judgment that the legislature had illegally adopted RSA 651:2, II-e." Starr, 154 N.H. at 175.  The crux of his claim was that the legislature had no authority to take up matters, such as truth in sentencing, that were not enumerated in the G&C resolution, and that because the G&C resolution did not mention truth in sentencing, his right to due process was violated by the enactment of RSA 651:2, II-e.  Id.  The absence of truth in sentencing from the G&C resolution was the entire basis for Starr's due process claim.  See Starr, 154 N.H. at 179.  "[T]he Governor . . . responded with a motion to dismiss, which was granted on March 3, 2005."  Id. at 175.

On appeal, the New Hampshire Supreme Court "assume[d], without deciding, that [the New Hampshire] constitutional due process protections attend the passage of legislation, [and] conclude[d] that the legislature provided such protections in this case."  Id. at 179.  The Court went on to hold:

> The Federal Constitution offers the petitioner no greater protection than does the State Constitution under these circumstances.  See L C & S[, Inc. v. Warren County Area Plan Comm'n, 244 F.3d [601,] 605

> [(7th Cir. 2001)] (concluding that "bona fide" legislation requires no notice or opportunity to be heard).  Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

Starr, 154 N.H. at 180.

As construed by the magistrate judge, petitioner's claim is this:

> [P]rior to passage of the "truth in sentencing law," the public was not given adequate notice or an opportunity to be heard regarding that law, and the enactment of the law, therefore, violated the due process requirements of the Fourteenth Amendment.  Accordingly . . . enforcement of that statute, to deprive [petitioner] of the ability to earn good time credits to reduce his minimum sentence, violates his constitutional rights.

(Order (document no. 4) at 4.)

**The Legal Standard**

Federal habeas corpus relief may be granted "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), has significantly limited the power of the federal courts to grant habeas corpus relief to state prisoners.

4

When a petitioner's claim "was adjudicated on the merits in State court proceedings," id., a federal court may disturb a state conviction only when: (1) the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2); or (2) the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362, 399 (2000).

Notwithstanding petitioner's argument to the contrary, his petition is subject to AEDPA's strict standard of review, because his federal due process claim "was adjudicated on the merits in state court proceedings." Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003) (quoting Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001); citing Ellsworth v. Warden, 333 F.3d 1, 6 (1st Cir. 2003)). Specifically, in reliance upon L C & S, 244 F.3d at 605, the state supreme court ruled that legislative action is not subject to the due process requirements of the Fourteenth Amendment, and thus held that the manner in which HB 20 was

enacted did not violate Starr's federal constitutional rights.[1]

## Discussion

Respondent argues that he is entitled to judgment as a matter of law because: (1) the legislature's enactment of HB 20 did not violate petitioner's procedural due process rights; (2) enactment of HB 20 did not violate petitioner's substantive due process rights; and (3) petitioner cites no authority to support his claim that specific enumeration in the G&C resolution was necessary to provide notice to the public of the matters the legislature would be taking up at its special session. Petitioner counters that: (1) he is entitled to de novo review;[2] (2) the state supreme court erroneously found, as a factual matter, that members of the public had spoken at the January 5 hearing on HB 20; (3) the state supreme court incorrectly determined that public testimony at the January 5 hearing demonstrated the adequacy of public notice concerning the truth-in-sentencing amendment to HB 20; (4) he has provided authority

---

[1] In its analysis under the state constitution, the New Hampshire Supreme Court did not decide whether "constitutional due process protections attend the passage of legislation," Starr, 154 N.H. at 179, but assumed that they did, id. However, that determination pertained to petitioner's state constitutional claim, not his federal constitutional claim, which is at issue here.

[2] As already explained, petitioner is incorrect.

for the proposition that enumeration in the G&C resolution was a necessary prerequisite for legislative consideration of truth in sentencing;[3] (5) the cases respondent cites are inapposite; and (6) due process attaches to the enactment of legislation.  More specifically, he argues:

> The Petitioner is not saying that he, or any other individual, was entitled to personalized notice prior to the enactment [of the] TSA [truth in sentencing act].  The Petitioner is also not presenting that he was entitled to some type of notice or hearing before the requirements of [the] TSA applied to his sentence.  The petitioner is asserting that the legislature, especially when meeting in special session, had to provide some type of general notice to the citizens to apprise them that [the] TSA was being considered and/or enacted so that interested individuals could speak at the public hearings.  Where no public notice was provided, the legislature violated the due process of the Fourteenth Amendment by failing to provide adequate notice.

(Pet'r's Mem. of Law (document no. 10-2) at 8-9.)  He further argues: "In the present matter, no notice of [the] TSA was provided to the public, absolutely none.  Therefore, the enactment of the TSA was in violation of the Fourteenth Amendment and invalid."  (Id. at 10.)

---

[3] The four cases petitioner cites are all from other states and turn on an analysis of state constitutional provisions.  None of them addresses the issue in this case, which is whether the procedure employed by the New Hampshire legislature offended the federal constitution.

Under AEDPA's strict standard of review, respondent is entitled to prevail because the New Hampshire Supreme Court did not render a "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1).

Petitioner cites three United States Supreme Court opinions in his brief.  One concerned "the constitutional sufficiency of notice to beneficiaries on judicial settlement of accounts by the trustee of a common trust fund established under the New York Banking Law."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 307 (1950).  The second concerned whether a person could be prosecuted under both federal and state law for "the manufacture of intoxicating liquor for beverage purposes," Hebert v. Louisiana, 272 U.S. 312, 313 (1926), and whether the United States Supreme Court had the authority to decide whether the Louisiana Supreme Court had correctly construed a Louisiana statute, id. at 316-17.  Mullane and Hebert are so different from this case that the New Hampshire Supreme Court's decision on Starr's appeal could not have been either contrary to or an unreasonable application of those decisions.  See Williams v. Taylor, 529 U.S. 362, 399 (2000) (construing the "contrary to" and "unreasonable application" clauses); Sleeper v. Spencer, 510

F.3d 32, 38 (1st Cir. 2007) (citing L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002)) (construing the "unreasonable application" clause).

The third Supreme Court case petitioner cites was a constitutional challenge to an Indiana "statute providing that a severed mineral interest that is not used for a period of 20 years automatically lapses and reverts to the current surface owner of the property, unless the mineral owner files a statement of claim in the local county recorder's office." Texaco, Inc. v. Short, 454 U.S. 516, 518 (1982). Texaco, however, was a challenge to the substance of the Indiana statute, not the procedure by which it was enacted. Moreover, the Supreme Court explained in Texaco that "[t]he due process standards of Mullane apply to an 'adjudication,'" 454 U.S. at 535, and that "[t]he Court in Mullane itself distinguished [from an adjudication] the situation in which a State enacted a general rule of law," id. Thus, the Texaco opinion underscores the inapplicability of Mullane to the facts of this case.

The New Hampshire Supreme Court's decision in petitioner's direct appeal was neither contrary to nor an unreasonable application of Mullane, Hebert, Texaco, or any other decision by the United States Supreme Court. The Court has never imposed, or

9

implied the existence of, any federal due process requirement with regard to the process by which state legislation is enacted. And, it certainly has not held that the federal due process clause precludes a state legislature meeting in special session from considering matters not enumerated in the executive branch resolution or proclamation that called it into session. To the contrary, the Court has held that when state statutes grant officials immunity from tort claims, or adjust welfare benefits, "the legislative determination provides all the process that is due." Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982) (citing Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441 (1915)); cf. Atkins v. Parker, 472 U.S. 115, 129 (1985) ("The procedural component of the Due Process Clause does not 'impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits.'") (quoting Richardson v. Belcher, 404 U.S. 78, 81 (1971)). Because the United States Supreme Court has never interpreted the due process clause to require those affected by legislation to receive any form of notice beyond that provided by the legislative process itself, and has never established any constitutional standard for the forms of public notice that a state legislature must provide before it may enact legislation of general applicability, the New Hampshire Supreme Court did not render a decision that was either contrary to or an unreasonable

application of federal law when it ruled that petitioner's federal due process rights were not violated by the manner in which RSA 651:2, II-e, was enacted.  Accordingly, respondent is entitled to judgment as a matter of law.

Finally, the court notes the lack of factual support for petitioner's claim that the public was given no notice that the legislature was considering truth in sentencing during the 1981-82 special session.  The public record demonstrates that: (1) the truth-in-sentencing amendment to HB 20 was discussed at the January 5, 1982, public hearing; (2) the amendment was mentioned in the January 21, 1982, House Journal, which stated: "The amendment specifies certain serious crimes for which the full minimum sentence imposed shall be served," H. JOUR. 25; (3) the full text of a truth-in-sentencing amendment was published in the January 28, 1982, House Journal, id. at 35-36, which characterized HB 20 as pertaining "to the parole, sentencing and credit for good conduct of prisoners," id. at 35; and (4) the amendment was debated on the floor of both the House, H. JOUR. 25, 37, and the Senate, S. JOUR. 149-56.  Approximately four months before HB 20 was finally adopted, the public had been given notice in a variety of forms that the legislature was contemplating the enactment of a truth-in-sentencing law.  On

11

that basis, even under de novo review, respondent would be entitled to judgment as a matter of law.

## Conclusion

For the reasons given, respondent's motion for summary judgment (document no. 9) is granted. The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 5, 2008

cc:  Darren Starr, pro se
     John R. Lilly, Esq.
     Nancy J. Smith, Esq.
     John Vinson, NH Department of Corrections
     Stephen D. Fuller, Esq., NH Attorney General's Office